Robert Galindo SANDOVAL, Appellant,

v.

Lois Mae SANDOVAL, Appellee.

No. S–6602.

Supreme Court of Alaska.

May 17, 1996.

Kenneth C. Kirk, Anchorage, for Appellant.

Grant Stewart, Wasilla, for Appellee.

Before COMPTON, C.J., RABINOWITZ, MATTHEWS, and EASTAUGH, JJ., and CARPENETI, J. Pro Tem.*

## OPINION

CARPENETI, Justice, Pro Tem.

### I. INTRODUCTION

This appeal presents the question whether Robert Sandoval's Rule 60(b) Motion to Set Aside Judgment should have been granted. The trial court found that his motion was untimely filed. We affirm.

### II. FACTS AND PROCEEDINGS

Lois Sandoval and Robert Sandoval were married from 1972 to 1981, for about half of 1984, and from 1985 until 1993. Lois filed for divorce in April 1991. They have five children, one adult and four minors. One child, a daughter, is Lois's natural child and Robert's adopted child.

In August 1991, Robert was ordered to pay child and spousal support to Lois. After an April 1992 hearing on an order to show cause for alleged contempt, the court found that Robert had not made the required payments since the last hearing. The court ordered Robert to find a job that would pay him for at least forty hours of work per week.

In February 1992, Lois filed a Motion for Appointment of Guardian Ad Litem, alleging that Robert had sexually abused his adopted daughter. In March 1992, Robert left Alaska. On April 8, 1992, Lois was granted sole interim custody of the children, and stringent limits were placed on Robert's visitation rights.

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

Robert testified that he left Alaska because he "couldn't bear being here any longer [and] had to leave." He also had a promise of employment in Phoenix, Arizona. The job "did not work out" and Robert spent about a month in Phoenix looking for other employment. Robert went to California and found a job that paid $6.53 per hour. He claims that in November 1992 he was offered a mining job in Venezuela at $10.00 per hour that paid "lots of overtime." He apparently was flown by the investors in the operation to Miami in preparation for this new job, but he claims a coup in Venezuela prevented the operation from hiring him.

Robert claims that the investors sent him to Guyana instead, where he arrived on December 1, 1992. He stayed in Georgetown, Guyana, until March 1993, "when he was sent into the interior of the country to begin an operation, expecting to be gone from one to two weeks." Robert contends that he had no access to communications or transportation in the interior, and discovered that the person for whom he was to work did not have a valid mining claim. This individual, according to Robert, prevented him from leaving.

The divorce hearing was scheduled for March 30, 1993. Robert had notice of the hearing. He maintains that he was unable to be present at the trial because he was stranded in the interior of Guyana at that time. He did not get out of the interior and back to Georgetown until early April 1993.

When Robert did not appear at the divorce hearing, Lois's attorney drafted proposed Findings of Fact and Conclusions of Law for the court. He mailed them to Robert in California. Robert arrived in California on April 26, 1993, and saw the proposed Findings and Conclusions. He did not object to them in any way at that time. He returned to Alaska in late April or early May. The proposed Findings of Fact and Conclusions of Law were signed by Judge James Hanson on May 11, 1993, and served by mail on May 13. Robert did not appeal, contact the court

to explain his situation, or otherwise move for relief.

On May 24 Robert talked with an attorney about his case, with "negative results."[1] On May 26, 1993, Robert found another attorney who he thought could help him, but who would not do so without a $3,000 retainer. That attorney suggested filing a Civil Rule 60(b) motion, but Robert did not have the money to pay him.

On April 26, 1994, almost one year after the decree had been entered, Robert produced the necessary retainer and his attorney filed a Motion to Set Aside Judgment. On June 22, 1994, Lois moved to reduce to judgment both the child support arrearages and the spousal support arrearages. Both motions were heard in August 1994. On August 15, 1994, Judge Rene Gonzalez granted Lois's motion to reduce the arrears to judgment. On August 16 the court denied Robert's Motion to Set Aside Judgment. Robert appeals.

## III. DISCUSSION

### A. Standard of Review

■ The standard for review of an order denying relief from judgment is whether the trial court abused its discretion. *Bauman v. Day*, 892 P.2d 817, 828 (Alaska 1995); *Gregor v. Hodges*, 612 P.2d 1008, 1009–10 (Alaska 1980) (per curiam); *McCracken v. Davis*, 560 P.2d 771, 776 (Alaska 1977).

### B. Robert's Rule 60(b) Motion Was Not Timely Filed

■ Robert's Motion to Set Aside was brought under Alaska Rule of Civil Procedure 60(b)(1), which provides that a court may relieve a party from a judgment or order if the court finds there was mistake, inadvertence, surprise, or excusable neglect. The motion must be made within a "reasonable time" and in no case later than one year after notice of the judgment. Alaska R.Civ.P. 60(b).[2]

The trial court ruled:

---

1. The cited affidavit states it was 1994, not 1993. From the context of the affidavit and both parties' briefs, it is clear that the "1994" date in the affidavit was a typographical error.

2. Lois argues that the trial court's decision is mandated by *Kenai Peninsula Borough v. English Bay Village*, 781 P.2d 6 (Alaska 1989). In *Kenai Peninsula Borough* we held that contentions

This court finds from the record in this case that no excusable neglect exists to allow vacation of the judgment entered by Judge Hanson on May 11, 1993. The defendant knew of the service proceedings and of the disputed provisions in the decree and yet attempted to take no action until almost a year later. The defendant knew of the disputed provisions in the decree before Judge Hanson entered his final judgment and yet he took no action to bring the issue before Judge Hanson in a timely manner. The defendant does not have a good reason for his delay in filing his Civil Rule 60(b) motion and for his failure to take action sooner said motion is DENIED.

A party moving for relief from judgment has the burden of proving his entitlement to relief. *M. D. Markland v. City of Fairbanks*, 513 P.2d 658 (Alaska 1973). Even if we were to accept all of Robert's factual assertions at face value, he does not adequately explain his failure to challenge the judgment within a reasonable time after

based on facts known to a party at the time when a direct appeal is possible must be raised on direct appeal or by a Rule 60(b) motion that is brought within the time for an appeal. *Id.* at 7. We take this opportunity to note that the rule of *Kenai Peninsula Borough* applies only to Rule 60(b) motions that claim a mistake of law was made by the trial court. *See Cleary Diving Serv., Inc. v. Thomas, Head and Greisen*, 688 P.2d 940, 942 (Alaska 1984); *State v. Alaska Continental*

his return from South America. When he was unable to retain an attorney, he took no action at all on his case: neither filing a motion *pro se*, nor seeking *pro bono* legal assistance, nor even communicating with the court in any way. We cannot say that it was an abuse of discretion for a trial court to find that such conduct does not constitute excusable neglect, inadvertence, or surprise.

## IV. CONCLUSION

Robert did not demonstrate excusable neglect sufficient to make it an abuse of discretion for the court to deny his Rule 60(b)(1) motion. The decision of the trial court is AFFIRMED.

MOORE, J., not participating.

*Dev. Corp.*, 630 P.2d 977, 996 n. 24 (Alaska 1980); 11 Charles A. Wright et al., *Federal Practice and Procedure* § 2858, at 296–98 (2d ed.1995). *Kenai Peninsula Borough* should not be read as extending to all Rule 60(b) motions, and especially to those that claim mistake, inadvertence, surprise, or excusable neglect of a party to the action. To the extent that *Kenai Peninsula Borough* stands for this overbroad view, we now limit it.